**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEILA RODRIGUEZ and** | : | **CIVIL ACTION** |
| **CHRISTOPHER C. CORBIN, a minor** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 15-6186** |
| **MONTGOMERY COUNTY OFFICE OF** | : | |
| **CHILDREN AND YOUTH, JOAN DOLAN,** | : | |
| **HOLLY JUDGE, BRANDON BORGES** | : | |
| **and CURT ZINCIO** | : | |

**<u>MEMORANDUM OPINION</u>**

**Savage, J.**                                                                                           **May 17, 2016**

  The claims in this *pro se* action arise out of a Montgomery County Juvenile Court dependency proceeding that resulted in an adjudication of dependency.   Keila Rodriguez, whose minor son, C.C., was declared dependent and removed from her custody, claims she was deprived of the custody of her son in violation of their constitutional rights.   She has sued the Montgomery County Office of Children and Youth ("MCOCY"); three individuals working for MCOCY, Joan Dolan, Holly Judge and Curt Zincio (the "MCOCY defendants"); and, an individual working under contract with MCOCY, Brandon Borges.

  Moving to dismiss the complaint, the MCOCY defendants argue that the *Rooker-Feldman* doctrine divests us of jurisdiction because the plaintiffs essentially seek rejection of a state-court judgment.   They also contend that the individual defendants enjoy absolute immunity and the complaint fails to state a claim based on § 1983 municipal liability.   They also assert that MCOCY is not a legal entity subject to suit and the plaintiffs have failed to state a claim upon which relief can be granted.

Borges has also moved to dismiss the complaint, arguing that we should abstain from exercising jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971).  Also, like the MCOCY defendants, he contends that the *Rooker-Feldman* doctrine applies and the plaintiffs have failed to state a claim.

### Factual and Procedural Background[1]

Rodriguez is the single mother of a nine-year-old son, C.C., who suffers from attention deficit hyperactivity disorder, and pervasive developmental disorder, an autism spectrum disorder.[2]  A fourth-grade student, C.C. was placed in a special education program due to inattentive, disruptive and socially inappropriate behavior.[3]  In the spring of 2015, his behavior began to deteriorate.[4]  On April 20, 2015, during a routine evaluation by a physician, he made a comment questioning Rodriguez's disciplinary approach.[5]  The physician reported the comment to MCOCY.[6]

Rodriguez was then contacted by MCOCY.[7]  In the course of her communications with MCOCY, she requested information about the possibility of placing C.C. in a therapeutic setting.[8]  After Curt Zincio, an intake case worker for

---

[1] The facts are recited from the complaint.  For purposes of considering the motions to dismiss, we accept the facts alleged as true and draw all reasonable inferences from them in the plaintiffs' favor.

[2] Compl., Doc. No. 1 at 6, ¶¶ 1-2.

[3] *Id.*

[4] *Id.* at 12.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

MCOCY, opened a case,[9] case workers Brandon Borges of Justice Works and Joan Dolan of MCOCY contacted her.[10] On June 8, 2015, Dolan met Rodriguez at her place of employment.[11] At the meeting, Rodriguez inquired about documents needed to have a hearing scheduled.[12] Because Dolan was late, the meeting lasted only five minutes.[13]

After Rodriguez instructed Borges not to contact her during working hours, Borges attempted to visit her at her home at 2:25 PM on June 11, 2015.[14] Unable to make contact with Rodriguez, Borges left his business card.[15] Due to this attempted contact and the failure of Borges to respond to her communications on several occasions, Rodriguez instructed Borges, via email, not to contact the family again.[16] Nevertheless, on the evening of June 17, 2015, Borges again attempted to contact Rodriguez at her home.[17] Rodriguez asked Borges to leave and subsequently emailed Borges and MCOCY asking them to close her case.[18]

The following day, Dolan served Rodriguez with an order to appear before the Juvenile Court.[19] That same day, MCOCY removed C.C. from day camp.[20] An

---

[9] *Id.*

[10] *Id.* at 12-13.

[11] *Id.* at 13-14.

[12] *Id.*

[13] *Id.*

[14] *Id.* at 13.

[15] *Id.*

[16] *Id.* at 14.

[17] *Id.*

[18] *Id.* at 14-15.

[19] *Id.* at 15.

[20] *Id.*

emergency custody hearing was held the following day.[21]   Rodriguez did not appear.[22]

On June 30, 2015, after a hearing attended by Rodriguez, the Juvenile Court

adjudicated C.C. a "dependent child."[23]   The court granted legal and physical custody to

MCOCY.[24]

    In her *pro se* amended complaint,[25] Rodriguez alleges that the defendants

conspired to remove C.C. from her custody without complying with Pennsylvania law.

She accuses them of failing to conduct a "complete and adequate (also legally required)

objective investigation," and making false representations bearing on dependency.   In

sum, she complains about the way the defendants did their jobs.

    She seeks a judgment declaring that C.C. was unlawfully removed from her care,

and an injunction ordering MCOCY to return C.C. to her custody.   She also seeks

monetary damages for emotional distress and civil rights violations.

### Standard of Review

    The standard of review of a motion to dismiss made pursuant to Rule 12(b)(1)

depends on whether the motion is a facial attack or a factual attack.   *See Constitution

Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014); *Petruska v. Gannon Univ.*,

---

[21] *Id.*

[22] *Id.*

[23] *Id.* Pennsylvania law declares a child "dependent" who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." 42 Pa.C.S. § 6302.

[24] Compl., Doc. No. 1 at 15.

[25] While the motions to dismiss were pending, Rodriguez filed a motion for leave to amend her complaint to add Montgomery County and Kelly Greene, an MCOCY supervisor, as defendants.  We did not require the defendants to refile their motions.  On May 5, 2016, Rodriguez filed a second motion to amend the complaint to add Marilou Doughty, Lisa Kane Brown and Christine Terebelo as defendants. According to Rodriguez, Doughty and Terebelo signed the petition that initiated the dependency proceedings, while Kane Brown acted as guardian *ad litem* for C.C.

462 F.3d 294, 302 n.3 (3d Cir. 2006).   Consequently, we must distinguish between facial attacks and factual attacks.   A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court" because of some jurisdictional defect.   *Constitution Party*, 757 F.3d at 358.   In reviewing a facial attack, as we do in considering a Rule 12(b)(6) motion, we accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences arising from them in favor of the plaintiff.   *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

A factual attack is "an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction."   *Constitution Party*, 757 F.3d at 358.   In other words, in a factual challenge to jurisdiction, the defendant disputes the allegations on which jurisdiction depends.   In that instance, we need not accept plaintiff's allegations as true and we may consider materials outside the complaint to determine whether the exercise of federal jurisdiction is proper.   *CNA v. United States*, 535 F.3d 132, 139, 145 (3d Cir. 2008).

Here, the defendants bring a facial challenge to our subject matter jurisdiction. They argue that even when the allegations are accepted as true, there is no subject matter jurisdiction and they have immunity from the plaintiffs' claims.

A *pro se* plaintiff's pleadings must be considered deferentially, affording her the benefit of the doubt where one exists.   *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).   With these standards in mind, we shall accept as true the facts as they appear in the complaint and draw all possible inferences from these facts in the plaintiffs' favor.

5

### Claims on Behalf of the Minor Child

Children may not be represented by non-attorneys in legal proceedings affecting their interests.  *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 883 (3d Cir. 1991) (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).  The right to counsel belongs to the child.  *Id.*  Parents cannot waive the right. Thus, parents, who are not attorneys and are acting *pro se*, may not bring claims on behalf of their children.  *Lazaridis v. Wehmer*, 591 F.3d 666, 672 (3d Cir. 2010) (citing *Osei-Afriyie*, 937 F.2d at 882-83).

Rodriguez, a non-lawyer, may not represent her minor child's interests. Therefore, all claims made on behalf of C.C. must be dismissed.

### *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine deprives a federal district court of subject matter jurisdiction over an action seeking to appeal and reverse a state-court decision.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005).  A federal court may not consider a claim that would require it to determine that the state-court judgment was erroneously entered or to take action that would negate the judgment.  *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005).

The doctrine applies only where: (1) the plaintiff in the federal action lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgment; (3) the judgment was entered before the federal suit was filed; and (4) the plaintiff seeks federal review and rejection of the state-court judgment.  *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil*, 544 U.S. at 284).  Factors two and four have been characterized as substantive;

and one and three, procedural. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). The procedural posture is rarely at issue. *See id.* at 89. The factors that typically drive the inquiry are two and four, the substantive ones. They are key to determining whether a federal suit brought by a state-court loser is barred by the doctrine or presents a non-barred independent claim. *Id.* at 85-87.

Although factors two and four are "closely related," they are distinct requirements. Both must be satisfied. A plaintiff who was injured by a state-court judgment is not always challenging that judgment. *Great Western*, 615 F.3d at 168. A plaintiff may complain of an injury caused by the state-court judgment without seeking review and rejection of it. In that event, *Rooker-Feldman* does not bar the action. Hence, the dispositive question is whether the plaintiff is not only complaining of an injury caused by a state-court judgment, but also inviting federal review and rejection of the judgment.

The federal court can review the state-court judgment and conclude it was erroneous without rejecting it. The federal court can find that the erroneous judgment caused the plaintiff's injury and grant relief to the plaintiff without disturbing the judgment. *Id.* at 173. A finding that a defendant violated an independent right does not require review and rejection of a state-court judgment, even when the violation is in some way related to state-court proceedings. *Id.* at 167; *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 492 (3d Cir. 1997). In that case, the plaintiff's claims are independent of the judgment and not barred by *Rooker-Feldman*. *Great Western*, 615 F.3d at 167 (citing *Hoblock*, 422 F.3d at 87-88). In other words, the doctrine does not apply where the plaintiff complains of harm caused by a defendant's actions, not by the

judgment.  *B.S. v. Somerset Cnty.*, 704 F.3d 250, 260 (3d Cir. 2013) (citing *Great Western*, 615 F.3d at 166).

In determining whether the plaintiff complains of an injury caused by a state-court judgment, the focus is on the source of the plaintiff's injury.  The question is: was the source of the injury the defendants' conduct or the state-court judgment.  If it was the defendants' actions, the federal suit is an independent claim that is not barred by the *Rooker-Feldman* doctrine, and is, instead, subject to state law principles of preclusion. *Exxon Mobil*, 544 U.S. at 293.  However, if the defendants' actions are produced by the state-court judgment, the claim is barred.

We look beyond the plaintiff's characterization of her claims.  *See Hoblock*, 422 F.3d at 86.  We must discern whether an action cast as a complaint of third party conduct is actually a complaint of an injury "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it."  *Great Western*, 615 F.3d at 167 (quoting *Hoblock*, 422 F.3d at 88).  We must ascertain whether she is attacking the state-court judgment or challenging the defendant's conduct in obtaining it.

When the injury occurred is instructive.  If the claimed injury pre-existed the state-court proceedings, it could not have been caused by the state-court judgment.  *Id.*

In this case, factors one and three are satisfied.  Rodriguez was the loser in state court.  The judgment was entered before she filed this action.

With respect to the claims for injunctive and declaratory relief, factors two and four are also satisfied.  Rodriguez complains of injuries resulting from the Juvenile Court's judgment removing her minor child from her custody.  *See Marran v. Marran*, 376 F.3d 143, 153 (3d Cir. 2004).  Granting injunctive relief would effectively reverse the

Juvenile Court's judgment.  In essence, Rodriguez is asking a federal court to rule that the state court's dependency determination was incorrect.  Therefore, we lack subject matter jurisdiction over Rodriguez's claims for injunctive and declaratory relief.

Not so for the damage claims.  They arise from how the defendants procured the judgment.  Rodriguez complains of the individual defendants' false and misleading statements and harassing conduct during the dependency investigation and the court proceedings.  The emotional distress claim arises out of the defendants' conduct before the court proceedings began and the adjudication of dependency occurred.  She alleges, "By removing child from parental care and subjecting parent to harassment, undue pressures, and unreasonable demands from The Montgomery County Office of Children and Youth, Parent has sustained emotional distress."[26]  Rodriguez is complaining about both C.C.'s removal from her care and the injury caused by the defendants prior to the dependency hearing resulting in the judgment.  The source of the injury in the former is the judgment; in the latter, it is the defendants' pre-existing conduct.  Thus, the former complaint is barred by the *Rooker-Feldman* doctrine, and the latter is not.

### Absolute Immunity

Absolute immunity shields child welfare workers for their conduct in preparing for, initiating, and prosecuting dependency cases.  *Ernst*, 108 F.3d at 495.  They are protected because their role in dependency proceedings is closely analogous to a prosecutor's role in criminal proceedings.  *Id.* at 496.  Immunity attaches even if the prosecutor acts without a good faith belief that there was any wrongdoing.  *Kulwicki v.*

---

[26] Compl., Doc. No. 1 at 24, ¶ 32.

*Dawson*, 969 F.2d 1454, 1464 (3d Cir. 1992).  It does not attach when the prosecutor acts outside his authority or jurisdiction.  *Id.*

Rodriguez claims that Dolan, Judge and Zincio made false statements to the Juvenile Court and failed to follow MCOCY policies and procedures in removing C.C. from her custody.  The alleged conduct was related to initiating, preparing for, and prosecuting the dependency proceedings—the same acts prosecutors routinely do in performing their job.  Absolute immunity extends beyond the initiation of proceedings.  It includes the preparation necessary to present the case, including gathering, reviewing and evaluating the evidence.  *Id.* at 1465.  Thus, because Rodriguez's claims against Dolan, Judge and Zincio arise out of their investigating and preparing for the dependency hearing, they are entitled to absolute immunity.[27]

Borges, although a private contractor, also enjoys absolute immunity.[28]   A defendant is not automatically precluded from absolute immunity merely because he is employed by a private entity.  A private contractor performing a prosecutorial function enjoys immunity in carrying out that role.  *Schaffren v. Phila. Corp. for Aging*, No. 92-5858, 1997 WL 701313, at *11 (E.D. Pa. Nov. 7, 1997) (citing *Slavin v. Curry,* 583 F.2d 779 (5th Cir. 1979); *Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.,* 757 F.2d 676, 688 (5th Cir. 1985)).  Consequently, a private actor, acting for or on behalf of a

---

[27] Likewise, Doughty and Terebelo enjoy absolute immunity for signing the petition that initiated the dependency proceedings.  Kane Brown, who acted as guardian *ad litem* for C.C., is also immune.  *See Hughes v. Long*, 242 F.3d 121, 127 (3d Cir. 2001) (citations omitted); *Gardner by Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989) (citations omitted).

The amended complaint contains only one substantive reference to Greene, in which Rodriguez alleges she met with her and Judge after requesting a new case worker.  Am. Compl., Doc. No. 17 at 5.  Because this action related to the dependency proceedings, Greene is also immune.

[28] Borges does not raise the immunity issue in his motion to dismiss.  However, immunity is a jurisdictional bar that may be raised *sua sponte.  F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000).

county's child and youth services office in a dependency matter, is immune from suit. *Dunsmore v. Chester Cnty. Children & Youth Servs.*, No. 92-3746, 1993 WL 101200, at *2-3 (E.D. Pa. Apr. 6, 1993) (citing *Burns v. Reed*, 500 U.S. 478, 492 (1991); *Rose v. Bartle*, 871 F.2d 331, 343-44 (3d Cir. 1989); *Myers v. Morris*, 810 F.2d 1437, 1447 (8th Cir. 1987)).

Borges, in his role as a case worker for Justice Works, was acting for MCOCY with the authority to exercise child custody powers traditionally reserved to the state. *See Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)) (setting forth test for state action by private entity); *Donlan v. Ridge*, 58 F. Supp. 2d 604, 609-10 (E.D. Pa. 1999) (citation omitted) (foster care agencies were state actors because removal of children from their homes is exclusive prerogative of the state).  In that capacity, he was a state actor.  Thus, like the MCOCY case workers, Borges is entitled to absolute immunity.

### Municipal Liability

A municipality may be held liable under § 1983 for injuries inflicted by its agents or employees only if the injuries were the result of a governmental policy or custom.  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010).  A governmental policy or custom can be established by showing either that the decision-maker possessing final authority to establish a municipal policy did so by issuing an official statement of policy or that a governmental custom developed when the official acquiesced to a course of conduct such that it operated as law.  *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007).

A § 1983 claim against a municipality may not be predicated on *respondeat superior*. *Monell*, 436 U.S. at 694.  While a municipality may be liable for failure to train its employees, such a failure results in liability only if it amounts to "deliberate indifference" to the rights of those with whom the employees come into contact.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014).

For municipal liability to attach, a plaintiff must demonstrate a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385.  The necessary causal link is shown where (1) the entity promulgates a policy statement and the injurious act occurs as a result of an implementation of that policy; (2) the policymaker himself violates a federal law; or (3) the policymaker is deliberately indifferent to the need for action to correct an inadequate practice that is likely to result in a constitutional violation and fails to act. *Jiminez*, 503 F.3d at 249-50.

Rodriguez does not identify a specific policy or custom that she contends resulted in a violation of her civil rights.  Instead, she makes conclusory allegations that MCOCY "has and is violating parent/child civil rights" and failed to train its staff in appropriate case handling.  She does not suggest how the training was insufficient or what additional or different training should have been employed.  MCOCY cannot be liable under a *respondeat superior* theory for any alleged violations by Dolan, Judge and Zincio.  Therefore, Rodriguez's claims against MCOCY shall be dismissed.[29]

---

[29] For the same reasons and because the amended complaint adds no substantive allegations against it, we shall dismiss Rodriguez's claims against Montgomery County.

**Conclusion**

We lack subject matter jurisdiction over the claims relating to the action of the Juvenile Court.  The individual defendants are absolutely immune.  There is no basis for municipal liability.  Therefore, we shall grant the motions to dismiss.